CARLTON, J.,
dissenting:
¶ 14. I respectfully dissent from the majority’s opinion and would affirm Harrell’s judgment of conviction. The majority concludes that Harrell’s statements and actions should have been suppressed as fruits of an unlawful stop. The majority also provides that no criminal activity supported the officer’s investigative stop. I disagree with both of these contentions. Police power extends beyond investigating criminal activity and embraces the protection of lives, health, and property of the city. See Patterson v. Kentucky, 97 U.S. 501, 504, 24 L.Ed. 1115 (1878). The majority overlooks the community-caretaker function of local law enforcement to protect the safety of the public, and the question for review here is “whether a reasonable person, given the totality of the circumstances, would believe the individual is in need of help or that the safety of the public is endangered.” Trejo v. State, 76 So.3d 684, 689 (¶ 14) (Miss.2011) (citations and quotation marks omitted).[1]
¶ 15. In this case, the officer responded to a call regarding a potential danger of pit bulls near Louisville Street. The officer acknowledged that Harrell appeared to lack control over the pit bulls, and that the pit bulls posed a potential danger to pedestrians. Not only does the record reflect evidence of a potential danger to public safety supporting the investigative stop,[2] but the record also shows a violation of a city ordinance. Harrell was clearly and objectively involved in a violation of a city ordinance adopted to ensure the safety of citizens exposed to pit bulls in public places within the city. As such, Harrell was not just stopped for being a potential hazard to public safety but also for violating an ordinance intended to protect the public. See Walker v. State, 881 So.2d 820, 826 (¶ 10) (Miss.2004) (“The local policeman is ... in a very real sense a guardian of the public peace[,] and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so.”); Moore v. City of Louisville, 716 So.2d 1136, 1137 (¶ 7) (Miss.Ct.App.1998) (“The governing authorities of municipalities shall have power to make all needful police regulations necessary for the preservation of good order and peace of the municipality. Neither can there be any dispute over a municipality’s authority to enforce its ordinances.” (internal citation omitted)).[3]
¶ 16. In this case, the city ordinance defining how pit bulls are to be controlled in public places reflects the duty and express authority of the police to enforce this ordinance. In addition to the express authority and duty to enforce the ordinance, *609 I respectfully submit that, even if the ordinance did not exist, the trial court’s judgment should be affirmed since the facts of this case reflect an effective balance of the seizure and the advancement of the public interest in the preservation of public safety.[4] Law enforcement possesses the paramount duty to preserve public safety, and the use of private property is subject to the police’s duty to preserve public safety.[5] The United States Supreme Court has upheld police regulations necessitated by conditions of a civil society, which were enacted in good faith and had a direct connection with protection of life, health, and property. Patterson, 97 U.S. at 506, 24 L.Ed. 1115.
¶ 17. A sufficient basis existed in this ease to support a lawful investigatory stop and the admission of the evidence at trial. Based on the foregoing, I respectfully dissent from the majority’s opinion.

. See also Cady v. Dombrowski, 413 U.S. 433, 436-48, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (recognizing a community-caretaker function, distinct from the detection, investigation, or acquisition of evidence, justifying police contact and stops); Floyd v. City of Crystal Springs, 749 So.2d 110, 114-19 (¶¶ 13-33) (Miss.1999) (acknowledging the community-caretaker function of local law enforcement).

. See Eaddy v. State, 63 So.3d 1209, 1213 (¶ 14) (Miss.2011).

. See also Mich. Dep’t of State Police v. Sitz, 496 U.S. 444, 447-55, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (sobriety checkpoints valid and effectively balanced degree of seizure with police interest advanced); The owner of a known vicious dog possesses a duty to control the animal. See Mongeon v. A & V Enters., Inc., 733 So.2d 170, 171-73 (¶¶ 5-12) (Miss.1997); Poy v. Grayson, 273 So.2d 491, 493-95 (Miss.1973); Phillips v. Garner, 106 Miss. 828, 828, 64 So. 735, 736 (1914).

. See Cady, 413 U.S. at 436-48, 93 S.Ct. 2523; Floyd, 749 So.2d at 114-19 (¶¶ 13-33); Moore, 716 So.2d at 1137 (¶ 7).

. See generally State v. J.J. Newman Lumber Co., 102 Miss. 802, 802, 59 So. 923, 926 (1912); Moore v. State, 48 Miss. 147, 147 (Miss.1873).