FRANK G. WARD, *Appellant*, v. THE CITY OF NORTON, *Appellee*.

No. 17,563.

SYLLABUS BY THE COURT.

"FACTORY ACT"—*City Waterworks—Gasoline Engine—Negligence*. A gasoline engine, used in connection with machinery consisting of belts, pulleys and cogwheels to pump water through pipes to supply the inhabitants of a city, is not a "manufacturing establishment" or a "mill" within the meaning of these terms in section 4682 of the General Statutes of 1909.

Appeal from Norton district court. Opinion filed April 6, 1912. Affirmed.

*J. R. Hamilton*, for the appellant.

*R. W. Hemphill*, and *L. H. Thompson*, for the appellee.

The opinion of the court was delivered by

SMITH, J.: The appellant brought this action against the city of Norton to recover damages which he had sustained by having his arm caught in the gearing connected with a gasoline engine which he, as an employee of the city, was using to pump water to the city waterworks. A demurrer was filed to his petition and sustained by the court. To reverse this ruling this appeal is brought.

It is conceded by the appellee that the petition states facts sufficient to constitute a cause of action in all respects but one, viz.: that the petition does not state facts which show that the place or establishment where appellant was working is such as is contemplated by section 4682 of the General Statutes of 1909. On the other hand, the appellant admits that if the appellee was not bound to guard its machinery under the provisions of that section he was not entitled to recover and the demurrer was properly sustained.

Section 4682, *supra*, defining the establishments or places to which the act applies, reads:

"Manufacturing establishments, as those words are used in this act, shall mean and include all smelters, oil refineries, cement works, mills of every kind, machine and repair shops, and, in addition to the foregoing, any other kind or character of manufacturing establishment, of any nature or description whatsoever, wherein any natural products or other articles or materials of any kind, in a raw or unfinished or incomplete state or condition, are converted into a new or improved or different form."

The paragraph of the petition by which it was intended to bring the case within that section reads:

"That in connection with said gasoline engine owned and used by said defendant to pump said water from said wells, and to force it through pipes to said pumping plant, there is certain machinery consisting of belts, pulleys and cog wheels. That connected therewith are four sets of cog wheels, each consisting of a large cog wheel about three feet in diameter, the cogs of which are geared with a smaller cog wheel about eight inches in diameter. That the smaller cog wheel receives its power through a belt and shaft, which causes said cog wheel to revolve with great rapidity. That the same is geared with the larger cog wheels and gives unto them motion. The cogs of the small and large cog wheel fit together closely."

It is conceded, then, that the only question presented is whether or not the appellant was employed in a manufacturing establishment or in a mill within the meaning of the act. In defining what comes within the provisions of this section (Gen. Stat. 1909, § 4682), in *Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657, it was said:

"It first includes by name a number of establishments, some of which may not be popularly known or regarded as manufactories—smelters, oil refineries, cement works, mills of every kind, machine shops and repair shops. By force of the definition these all become manufacturing establishments. Then all other manufacturing establishments were included by the

clause, 'and in addition to the foregoing any other kind. or character of manufacturing establishment of any nature or description whatsoever.' Then, in order that the full scope of the act might not be mistaken, the broadest possible definition of a manufactory was added—'[a place] wherein any natural products or other articles or materials of any kind, in a raw or unfinished or incomplete state or condition, are converted into a new or improved or different form.' . . . The process of manufacturing may be very complicated or it may be simple in the extreme. There are primary and secondary stages, but the legislature has said that all establishments for the modification of natural objects to adapt them to human needs are embraced in the act." (pp. 609, 610.)

It is contended that the water that was pumped was, in a sense, manufactured, for the reason that it was brought within control for the use of the inhabitants of the city. It is not even contended that it was modified in any way to adapt it to human needs. The water was in no sense manufactured or changed in any way. It was simply conveyed from one elevation to another or from one place to another, and hence it can not be said that it was in any way manufactured or that the establishment or machinery which was employed in conveying it was a manufacturing establishment. It is suggested, however, that the machinery and power used in moving the water may be regarded as a mill within the meaning of the section. Several definitions of the word "mill" are given in Webster's New International Dictionary. The fourth definition is applicable to the use of the word as made in section 4682 of the General Statutes of 1909. It reads:

"A common name for various machines which produce a manufactured product, or change the form of a raw material by the continuous repetition of some simple actions; as, a saw*mill*, a stamp *mill;* etc."

The machinery and plant in question certainly can not be regarded as a mill under this definition. It will be observed that this definition would include a mill as

one of the appliances in a factory, or a machine used therein which produces a manufactured product or changes the form of raw material, etc.; neither of which results is caused by the machine in question, as alleged in the petition. It is true that there is a ma-chine in common use and well known in commerce called a "windmill" which in operation only elevates water. This kind of a mill was formerly used to con-vert grain into flour or meal, which was a manufactur-ing process, and the machine now used retains the name "windmill" only because, like the old grinding mill, it is propelled by the wind. We conclude that the place and machinery described in the petition was neither a manufacturing establishment nor a mill within the meaning of the statute.

The judgment is affirmed.

PORTER, J. (dissenting) :   I find myself unable to concur with the majority. A wise and beneficent law, enacted for the purpose of safeguarding the lives and limbs of employees whose duties compel them to work in close proximity to dangerous machinery should re-ceive at the hands of the courts the most liberal in-terpretation possible, instead of a technical one which defeats the evident purpose of the legislature. The place where the plaintiff received his injury is certainly within the spirit of the law. By a quite strict interpre-tation of the words "mills" and "manufacturing estab-lishments" it might be said that a waterworks establish-ment does not come within the letter of the act. Yet it requires but a slight liberality to include within the term "mill" a place equipped with machinery for the purpose of pumping water and distributing it to con-sumers. There are, among other kinds of "mills," such things as water mills. The statute says "mills of every kind." No person who has ever visited a waterworks plant in any of the larger cities of the state and has seen the powerful engines, the ponderous drive-

wheels, the complicated shafting and other danger-
ous machinery in operation, would for a moment
suppose that the legislature, in adopting the act for
the protection of all persons employed or laboring
in manufacturing establishments, intended to ex-
clude from the protection of the act persons employed
in such places. Whether those who own and operate
such establishments are private individuals, private
corporations, or public corporations, they owe the same
duty to safeguard their employees as do those engaged
in the manufacture of plows or any commercial product.
In *Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657, we held
that the words "manufacturing establishment" in this
act applied to a place where scrap iron is broken up or
cut up into various lengths for convenience in shipping
or in handling at mills where the scrap is purchased. It
is true that the water which finally reaches the con-
sumer is nothing more than water—the same water
that was pumped from the river or the wells. But,
as every one knows, something is required to be done
with it before it is ready for distribution and consump-
tion. It is first pumped into great reservoirs or settling
basins, and usually it is treated chemically for the pur-
pose of causing the precipitation of mud or sand. In
most instances it is filtered in order to reduce the per-
centage of bacteria it contains; and finally, when fit,
and sometimes when unfit, for use, it is distributed to
the public and to private consumers. All this process
seems to require more of a change in the form of a raw
material than the mere cutting of scrap iron into
shorter lengths for convenience in handling. A bot-
tling works where natural spring water is put into
bottles and casks, without any other change in the water
itself, would be a manufacturing establishment within
the meaning of the act as construed in *Caspar v. Lewin*,
supra. An establishment for pumping or storing
natural gas and distributing it to consumers, with no
other change in the natural state of the gas than to

regulate its force, would likewise, in my opinion, fall within the definition given to the term by the legislature. The evident purpose of the legislature was to extend protection to employees in every conceivable kind of a manufacturing establishment. In attempting to make its terms broad, they omitted specific mention of such establishments as waterworks and gas plants. I think it should be held that the place where the plaintiff was injured falls within both the legislative definition of a mill and that of a manufacturing establishment, but more clearly within the latter.

JOHNSTON, C. J., and BURCH, J., concur in the dissenting opinion.