BUCKEYE COTTON OIL CO. *v.* STATE.

[60 South. 775.]

1. MASTER AND SERVANT. *Hours of service. Laws* 1912, *chapter* 157. *Manufacturing.*

Laws 1912, chapter 157, providing "that it shall be unlawful for any person, firm or corporation, engaged in manufacturing or repairing to work their employees more than ten hours per day, except in cases of emergency, or where public necessity requires in such departments," and providing a penalty for its violation, is constitutional.

2. SAME.

A cottonseed oil mill engaged in separating cotton seed into its component parts, giving to those parts new forms, and rendering them suitable for new uses, is engaged in "manufacturing" within the Laws 1912, chapter 157.

3. SAME.

In order for a corporation to be guilty under Laws 1912, chapter 157, it must not only be engaged in "manufacturing," but the employee alleged to have been worked overtime must be of the class protected by the statute, that is, employees who compose the organized force and work with machinery, whose work sup-

plements that of the machinery; and must be performed while the machinery is working, and in order that it may be kept in operation.

4. SAME.

If an employee is on duty only for one hour at a time and then off for an hour and not then confined to the precincts of the establishment, charged with some responsibility for the operation of the machinery he is at work less than ten hours a day; but if in fact he was on duty all the time, charged with keeping the machinery with which he worked in continuous performance of its functions, he was at work all the while and therefore for more than ten hours a day, and in such case it is immaterial that such employee may have had at times practically nothing to do.

5. SAME.

Under the Laws 1912, chapter 157, the fact that a mill was operated only five months in each year, during which time it was kept in a sanitary condition, and that work therein "tends to build up the vitality of the system," is immaterial, as the statute protects all employees in a designated class, without reference to the sanitary or unsanitary condition of the establishment in which their work is performed.

6. SAME.

Under Laws 1912, chapter 157, the working of each employee does not constitute a separate offense, the statute simply groups the employees of a manufacturing establishment, and makes the working of all or any of them, for more than ten hours in one day an offense.

APPEAL from the circuit court of Hinds county.
HON. W. A. HENRY, Judge.

The Buckeye Cotton Oil Company was convicted of working employees over ten hours a day and appeal. The facts are fully stated in the opinion of the court.

*Alexander & Alexander,* attorneys for appellant.

The lower court erred in convicting the appellant on each of the separate counts for having worked each of the firemen on the same day more than ten hours per day. We submit to the court that a strict interpretation

of this penal statute clearly negatives the idea that the working of each employee each day is a separate offense. The court itself in the Newman case has said that the legislature will not be deemed or held to have attempted an absurdity or vain thing. A mill employing two hundred men, for instance, violating the law one day as to all of the men, would no doubt be called upon, as will be shown by a simple calculation, in case the limit of the law were applied, to surrender its whole plant and equipment to the state in fines. Furthermore, the law provides: "It shall be unlawful for any person, firm or corporation engaged in manufacturing or repairing to work their employees more than ten hours per day." Had the legislature intended to make it a criminal offense to work each employee each day more than ten hours it would have said so, and the offense is the working of the employees, not separately, but collectively more than ten hours per day; and in section 2 of the act it provides, "and each day's violation shall constitute a separate offense," which clearly shows what the legislature intended to be the offense by saying in so many words that each day's violation was the offense and not each employee. Under section 1603 of the Code of Mississippi, 1906, words must be given their usual meaning and signification, and we submit that clearly this was intended and the lower court was in error in convicting on each count.

To our mind this is such a flagrant violation of the terms of the statute that we anticipate a reversal on this ground, but as said in the beginning of this brief, we sincerely trust that, should the court be of the same opinion, a reversal on this ground will not preclude them from passing upon all of the questions presented, not only for the benefit of appellant but for the public generally.

We submit to the court that appellant was not engaged in manufacturing. There are many decisions in the

103 Miss. 49

books defining "manufacturing" and there is a wide difference in opinion as to just what the term means. The original signification of the word is derived from the Latin and means to make by hand. Since the introduction of machinery and the numerous strides invention has made along this line, the meaning of the word in its usual significance has undergone a complete transformation. Manufacturing, as generally used, means the converting of raw material into some finished product by machinery. This court in the Newman case defined "manufacturing" in its opinion on the suggestion of error, as follows:

"When we now speak of manufacturing we usually have in mind an organized force of laborers working with machinery to produce from the raw materials the finished product."

The court has well defined the word and in view of the statute making it the duty of this court to give the word its usual significance, we submit that the work done at appellant's plants was not that of manufacturing. It appears from the statement of fact, as follows: "In this process, no other ingredient of any kind is added to the product; neither is it combined with any other material or component, the process being one of separating cottonseed into its four component parts, above stated."

The component parts in their crude state, including the oil and the linters, the separation of the linters being nothing more than a picking of the cotton off the kernel, and the pressing of the oil out of the kernel being nothing more than a cider press or a sugar mill; all of the products except the oil are by-products. The courts have given a different definition of the word "manufacturing" dependent upon the application of the statute. To statutes exempting manufacturing plants from taxation a liberal construction has been given, but to penal statutes and to criminal statutes necessarily the word has been used in its usual and strictest sense.

In the case of *Tidewater Oil Co.* v. *United States,* 171 U. S. 210, cited and approved in *State* v. *Am: Sug. Ref. Co.,* 25 So. 447, the court said: "Ordinarily the article manufactured takes a different form, or at least subserves a different purpose from the original materials; and usually it is given a different name."

In the case of *People* v. *Roberts,* 145 N. Y. 357, the court defined manufacturing as follows: "The process of manufacturing is supposed to produce some new article by the application of skill and labor to raw materials."

In the case of *State* v. *Eckendorf,* 14 So. 518, the manufacturer of bread and ice cream was held not to be a manufacturer. Likewise in the case of the *City of New Orleans* v. *Nannessier,* 32 La. Ann. 1075: "Manufacturing consists in giving new combinations to matter which has already gone through artificial process." *Norris* v. *Commonwealth,* 27 Pa. 949. And it was similarly defined in *City of New Orleans* v. *LeBlanc,* 34 La. Ann. 596.

Similarly electricity was not construed a "manufactured article" under a statute similar to the one in question. *Commonwealth* v. *N. O. Elec. Light & Power Co.,* 14 L. R. A. 107, 145 Pa. 105; *Commonwealth* v. *Edison, etc., Co.,* 145 Pa. 131; *Elec., etc., Co.* v. *Frederick City,* 36 L. R. A. 130.

It therefore appears from a collation of the authorities defining "manufacturing," that, giving the word its usual significance, as it should be, it could not be held to include the separating of any article such as oil in its natural state, without any addition of chemicals, or subjecting it to any process or refining.

Lastly, we contend that the word of an oil mill in its very nature is a work of emergency and, therefore, comes within the first exception, as stated in the statute. As will appear from the statement of facts, the oil mill industry is a peculiar one. Cottonseed, when allowed to

become damp in the damp fall and winter atmosphere of Mississippi, begin to sprout and become heated, and quickly spoil. The crop matures at about the same time all over Mississippi, and the mill is idle except for four months in the year during the seed season. This seed cannot be carried over until the summer as it would be sure to spoil and, therefore, the year's work must be done in four months if the seed of the farmers is to be utilized. By reason of this emergency it is absolutely necessary to work by night and day on two shifts of twelve hours each, with one hour off for refreshment for each laborer. With three shifts of eight hours each, it would be impossible to operate because the laborers could not be paid as much and labor could not be obtained and the business conducted on a paying basis. Therefore, we submit on the statement of facts that the work is one of necessity and comes within the intention of the statute. The word "necessity" implies that there is some reason which would benefit the greatest number of people why the statute should not be applied, or some reason which would make it inequitable or unjust to apply the statute. We submit that this is the case, as presented by the facts, and that the exception of emergency should be applied.

The same might be said with reference to the exception of "public necessity." The farmer must sell his seed, but he cannot do so unless there is a demand for same and the mills cannot take it unless they can work it, and the mills cannot work it unless they work night and day, and they cannot work night and day except on two shifts of eleven hours each.

*Watkins & Watkins,* attorneys for appellant.

We contended in the lower court, and we shall present to this court our views to the effect that chapter 157 of the Acts of 1912, known as the Ten-Hour Law, if the appellant can be properly convicted under the same, is

unconstitutional and void, in that the same prevents persons *sui juris* from making their own contracts, and therefore, violates the provisions of the fourteenth amendment to the Constitution of the United States, which is in the following language:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

The agreed statement of facts in this case shows that the business carried on by the appellant, in which it was working the employees shown in the record, was in no manner injurious to the good health of said employees, nor was the same detrimental to the good morals, or injurious in any manner to the health or well-being of the community. That being true, we respectfully submit to the court that any legislative enactment which would prevent the appellant from working its employees more than ten hours would deprive it of its property without due process of law, and be void as a violation of the organic law of the United States above referred to.

Again, no one denies at this day the authority of the legislature to pass usury laws, regulating the rate of interest at which money shall be lent. The public is interested in such laws; the weak are thereby, to a certain extent, protected against the oppression, greed and cupidity of those who would take advantage of their poverty. However, a law which would prevent the lending of money at all would be absolutely void for the reasons that we have above indicated.

So, without being of any practical assistance to the court, we would lengthen the illustration used, but for the discussion now in hand, we deem these sufficient. So let's apply this argument to the case in hand. What

right has the legislature to prohibit the appellant from entering into contracts with its employees? The right is not an arbitrary right. The right of the legislature must be based solely upon the public interest in the employment, and if the employment is of such a character that the public has no interest therein, then the legislature is without authority to interfere. The agreed statement of facts in this case demonstrates that the public is without interest in this employment; in other words, that there is no casual connection between the employment prohibited and the public health and welfare. The Supreme Court of the United States in four well-considered cases has made this question so clear and plain that a mere reference to the cases is all that is necessary.

The question was first presented to the Supreme Court of the United States in the case of *Holden* v. *Hardy,* 42 L. Ed. 780, 169 U. S. 366, wherein the statute of Utah prevented the employment of persons to work and labor in underground mines for more than eight hours per day was involved. It was contended in that case that the statute of Utah was an undue interference with the right to contract. The Supreme Court of the United States, however, held that the statute was constitutional.

The question was again presented in *Atkins* v. *Kansas,* 191 U. S. 207, 48 L. Ed. 148, wherein a statute of Kansas prohibited a contractor for a public work from permitting or requiring an employee to perform labor in excess of eight hours per day; and in that case, a contractor working upon the streets of Kansas City, Kan., was indicted for permitting one of his employees to work upon such work more than eight hours. In sustaining the validity of the statute, the court used the following language: "No question arises here as to the power of the state conflicting with the power of the Federal Constitution to make it a criminal offense for an employer in purely private work, in which the public has no concern,

to permit or require his employees to perform daily labor in excess of a prescribed number of hours."

. This question was again before the Supreme Court of the United States in the case of *Lochner* v. *People of the State of New York*, 198 U. S. 45, 49 L. Ed. 937. This case for the first time presented to the Supreme Court of the United States for its construction a state statute which prohibited an adult person from working more than ten hours in an employment adjudged not to be dangerous.

The validity of the act was questioned upon the ground not only that there was an unjust discrimination between other employments, but that under the laws of Oregon women had been emancipated in their property rights, and that the act in question prevented the making of lawful contracts between adult persons. The court, however, in that case reaffirming the doctrine which it had previously announced in the Lochner case that as to employments not injurious to the public interest the legislature could not interfere, that owing to the very nature or constitution of womankind, they did not stand upon an equal plane with men, and that their health and well-being was necessarily affected by long hours of labor.

The Lochner case was again discussed by the supreme court of the State of New York in the case of *People* v. *Williams*, 189 N. Y. 131, 81 N. E. 778. In that case, the statute of New York prohibited women from working in a factory before six o'clock in the morning, or after nine o'clock in the evening. It was held that this act was void; that it did not prevent women from working a certain number of hours, but prevented them from working at night; that for a women to work at night was not dangerous to her health or well-being; that the public had no interest therein, and that, therefore, the statute was void.

We would, in this connection, call the attention of the court to the case of *Lowe* v. *Reese Printing Co.*, 41 Neb.

127, 43 Am. St. Rep. 670, wherein there was under review a statute of the state of Nebraska which declared that a day's work for all classes of mechanics and laborers, excepting those engaged in farm or domestic labor, should not exceed eight hours, and provided a penalty for violation thereof. It was held in the supreme court of Nebraska that the act was unconstitutional, and deprived the parties of the right to contract when applied to employments not concerning the health, safety or welfare of society.

We desire to submit to the court the following suggestion. It may be that the act in question, if properly construed by this court, may be held constitutional by the Supreme Court of the United States. Frequently, in passing upon the constitutionality of a state statute, such acts have been held constitutional because by the decisions of the state court, the same were restrained within the constitutional limitations.

For instance, take the case of *Keher* v. *Stewart,* 197 U. S. 60, 49 L. Ed. 663. The legislature of the state of Georgia imposed a privilege tax of two hundred dollars on resident managing agents of nonresident packing houses. The supreme court of the state of Georgia in passing upon the act restrained it in its operation to intrastate business, although on its face the act applied to managing or resident managing agents of nonresident packing houses, and on its face applied to interstate business. The Supreme Court of the United States held that, in view of the fact that the supreme court of Georgia had restrained the operation of the act within constitutional limits, the act was valid, using the following language:

"It was, therefore, held that the tax, so far as applied to meats sold in Chicago and shipped to the petitioner in Georgia for distribution, could not be supported, but that so far as the petitioner was engaged in the business of selling directly to customers in Atlanta, he was en-

gaged in carrying on an independent business as a wholesale dealer and was liable to the tax. Accepting this construction of the Supreme Court, we think that the act so far as applied to domestic business is valid."

The same thing was held in the case of *Osborne* v. *State of Florida*, 164 U. S. 650, 41 L. Ed. 586. The same was held by this court in the case of *Railroad Co.* v. *Crawford*, 99 Miss. 697.

Such a construction by the court is not judicial legislation, because it may be assumed that the legislature did not intend to pass an unconstitutional act, and expected the court to put such a construction on it as would prevent the act from being inconsistent either with the Constitution of the state or of the United States. For instance, chapter 165 of the Laws of 1912 was an act for the regulation of child labor, which prohibited children under certain ages from working in factories at all and regulated the labor of children above certain ages. Section 9, however, provides in express terms that it was only the intention of the legislature to prohibit the working of children in employments dangerous to their health, or around dangerous machinery. Can it be doubted that the legislature had the same intent in reference to the act in question? In other words, that the legislature intended only to punish the employment of persons in occupations which are inherently dangerous to the well-being of the individual employed. The legislature certainly intended to throw no higher safeguard and protection around an adult person than it did around children. Both acts were passed at the same legislature and very nearly the same day, and should be construed together in order to ascertain the legislative intent. 36 Cyc. 1146; *Biloxi* v. *Bories*, 78 Miss. 657; *Smith* v. *State*, 99 Miss. 859; *Clements* v. *Anderson*, 46 Miss. 598; *In re Hall*, 38 Kan. 670; *Blackwell* v. *First National Bank*, 63 Pac. 43; *McGrady* v. *Terrell*, 84 S. W. (Tex.) 641; *Grant* v. *Cook*, 7 D. C. 165, wherein it is

held that laws passed at the same legislature should be construed as if embraced in one act, and that it is to be presumed that all statutes relating to the same or similar subjects are governed by the same policy and have the identical scope and design. We, therefore, respectfully contend that chapter 157 and chapter 165 taken together show that the legislature never intended to prevent an adult person or a child from working any number of hours in a harmless occupation not injurious to the individual or to the community. It will be noted that in the present instance, it is admitted that each of the employees who were employed at work more than ten hours were adults.

The agreed statement of facts in this case shows that the appellant company, like all other oil mills, runs only four or five months in the year; that cottonseed is a perishable product; that upon ginning the cotton, it must be at once brought to the mill, and within a reasonable time its component parts separated or the product will spoil; that the labor employed is not expert labor, but such labor as is picked up on the streets or from the farms and such occupations similarly situated. We respectfully submit to the court that the legislature did not intend by chapter 157 to regulate any such occupation. The idea is that the words manufacturing and repairing rather have reference to occupations more akin to repairing; in other words that manufacturing is limited by the word repairing, and refers to occupations where the employee would, by the labor of his hands, create, or, out of the raw material, make and manufacture some new article ready for human consumption. It is shown in the agreed statement of facts in this case that, owing to the necessities of the situation, oil mills during the short period which they operate are forced to run night and day, Sunday of course excluded; that they can be handled practically and successfully in no other manner. We do not believe that the legislature intended to regu-

late or interfere with the employment in such occupations, but intended to regulate the hours of work in cotton factories and similar institutions known to be injurious to the health of the individual, where the hours of labor are prolonged, and where the occupation is followed not for a short portion of the year, but year in and year out, thereby devitalizing the human system by the constant and unceasing toil. ·

*Frank Johnston,* assistant attorney-general, for the state.

Counsel for the appellee in their brief attempt to open up the whole question again in this honorable court, in respect to the validity and also in respect to the application of this act of the legislature. The question has been so thoroughly discussed by counsel in the Newman Lumber Company case on the original submission of that case, and upon a reargument that was had in that case, and has been so carefully and analytically investigated and decided by the court in its two opinions in that case, that I cannot undertake a reargument of those questions. ·

The court has decided the two questions arising upon said act clearly and comprehensively as follows: First, that this statute is a valid and constitutional exercise of the police power of the state, and, second, that the operation and effect and extent of this statute is to include manufacturing establishments and comprehensively defined in the court in both the opinions, one rendered by Judge REED and the subsequent opinion rendered by Judge COOK, that a manufacturing establishment in common parlance and the ordinary acceptance of the term was meant and does include under the operation of this law, all establishments engaged in manufacturing enterprises, either by the use of machinery, or by considerable bodies of organized labor working co-operatively, Especially is this true of establishments

conducting the business of manufacturing by machinery. If I were inclined to enter upon a rediscussion of either of these questions, I would find it impossible to present these matters in any possible new light; nor could I hope to add anything whatever to the strength, the reasoning, and the demonstrating of these questions which have been made with such conspicuous ability and learning by this court. I will make this observation, however, that this law, applying as it does to lumber companies engaged in the manufacture of lumber, must not only necessarily, but with stronger force, apply to a concern engaged in the manufacture of cottonseed oil and the by-products of cottonseed, for the simple reason that the machinery in the latter class of manufacturing establishments is more extensive and is more complicated, and the processes are far more complicated than in the case of lumber companies. Therefore, the principle of the decision made by this honorable court in the Newman Lumber case must apply to the case of a cottonseed oil company.

The precise question as applicable to a cottonseed oil company was presented to Judge Pardee, Judge Grubb and Judge Shelby, federal judges in New Orleans, by Mr. Wathen, a stockholder of the Jackson Oil & Refining Company, and the motion for an injunction against the enforcement of this statute was denied by those three learned judges. The whole point of attack in that proceeding was on the ground that the statute was invalid. The denial of the motion for an injunction necessarily proceeded on the ground that the law was valid, and upon the further ground, necessarily that the law applied to the Jackson Oil & Refining Company. The appellant in the present case occupies precisely the same status as the Jackson Oil & Refining Company, their business is identical, their processes are the same, and the character of machinery used by each is identical. I, therefore, submit to the court that these considera-

tions are conclusive in respect to the present case now before the court.

The business of this oil mill is not harmless nor innocuous. On the contrary its extensive and complicated machinery, and its various processes and mechanical appliances are a source of danger to the employees. Its odors are conspicuous and the flying particles of dirt and lint, and powder from the hulls and meal, are necessarily more or less unhealthy; and the manipulation of its machinery and appliances must necessarily be attended by danger to its operators.

In concluding these observations, I will call the attention of the court especially to the manner in which the stipulation in regard to the facts of a case of this character is to be considered.

In *Atkins* v. *Kansas,* 191 U. S. 207, there was a stipulation, almost identical in substance with the stipulation in the present case, which was to the effect that the work performed by the defendant's employees was not dangerous to life, limb or health and that the daily labor only for ten hours was not injurious. The court in its opinion in that case used the following language: "Some stress is laid on the fact stipulated by the parties for the purpose of this case that the work performed by defendant's employees is not dangerous to life, limb or health, and that daily labor on it for ten hours would not be injurious to them in any way. In the view we take of this case, these considerations are not controlling."

40 U. S. 207, 28 L. Ed., bottom of page 158:

I will briefly notice the stipulation in this case. It is universally held by the decisions on the question of labor laws, that it is for the legislature to decide which occupations should be regulated and what regulations are reasonable. It is, therefore, out of the question to suppose that this is a question for the court to determine upon either testimony submitted to the court or stipu-

lations as to the evidence by counsel in the case, as to whether the particular employment and maufacturing concern coming within the operation of the law is injurious to health or dangerous to the life or safety of the employees. A statute could be enacted by the legislature which would leave this whole question to the court to determine upon these considerations of health and safety, as to whether the law should apply to a particular occupation or manufacturing establishment; but the legislature in this case has adopted no such measure. It has, acting within the clear limits of its authority, undertaken to make a rule for all manufacturing establishments and this is conclusive upon the court, and the only exception to it which has been made by the court, either state or federal, is that of an instance where the legislature uses this power autocratically, arbitrarily, unreasonably and unjustly against the rights of a citizen. That is the crucial test. Outside of that, the whole question is conclusively for the legislature and not for the courts.

In the case of the lumber companies that have been before this court, the Newman Lumber Company and the Butterfield Lumber Company, there was no place in the argument or the decision of those cases for the theory that the court could go into a judicial investigation on evidence as to whether this occupation or particular establishment was injurious to the health or dangerous to the safety of the employees engaged in the manufacturing processes. The charge in the Newman Lumber Company case was generally, that that company was employing its labor for a longer period than allowed by this statute. It has never been supposed or suggested that the indictment, or an affidavit, had to contain a special averment that the particular occupation or employment which comes within the general terms of the law, was itself injurious to health or dangerous to the life or safety of the employees. It is manifest that the em-

ployment specifically named in the statute comes within operation of the law, and as an averment of this character is not necessary to the validity and effectiveness of the charge, necessarily no evidence of those facts was required by the statute. In a word, the whole question as to the operation of the statute depends upon the definition of the occupation prescribed by the statute; and, as has been expressly decided repeatedly by the courts, both state and federal, that the question of the reasonableness of the regulation, that is to say, whether it is in fact dangerous to life, health and the well-being of the employees is not an open question for the courts, and it has been closed out by the law.

In the case of *Barbier* v. *Connolly,* 113 U. S. 27, 28; 28 L. Ed. 933, the Supreme Court of the United States sustained a municipal ordinance limiting work in laundries within certain hours. In that case, the Supreme Court held that the law which applied in terms to laundries, was a valid exercise of the legislative power, and that case proceeded without any reference to the question whether the occupation thus limited was safe or sanitary or healthy. It simply held that the law was valid.

Upon the same line of decision, is the case of *Soon Hing* v. *Crowder,* 113 U. S. 703, 28 L. Ed. 1145. So on the same line is the Rhode Island case of the Ten-Hour Law for street railway corporations, 61 L. R. A. 612. So was the Utah case in the Supreme Court of the United States for mining employment which has been so freely commented on by the counsel in court in the progress of this controversy.

It therefore follows that the classification made by the legislature must be taken by the courts as conclusive on the face of the law, and it is not, under this statute or similar statutes, a question of judicial inquiry as to whether or not, in point of fact, the occupation is harmful to the degree of danger that pertains to this employ-

ment. Upon this doctrine of construction in regard to the application of this class of statutes, the court will follow the well-recognized rule that this is a question for the legislative judgment and discretion, and it is only left to the court to apply the act and enforce it according to its terms.

The precise question has always been whether the law is valid or not, and that being determined in favor of its validity, the law must be enforced according to its terms; for the court to interpolate into this law the conditions or terms that the particular occupation defined in the statute must be dangerous to the life or health of the employee would be nothing less than an amendment of the statute interpolated by judicial construction. This clearly is not permissible. It follows, necessarily, therefore, from these views and principles, that the stipulation in this particular case can have no sort of controlling influence upon the decision of the case in regard to the application of this statute. I will make this comment on the stipulation, that it is, absolutely extravagant in its terms, for it not only assumes that this entire business of manufacturing oil and the by-products of cottonseed is entirely harmless and absolutely safe, but that from a sanitary point of view, it is absolutely hygienic in its effect; and to show the impossibility of the decision of the court being influenced by this stipulation, I call attention to the extraordinary proposition in this stipulation that this occupation is conducive to the cure of tuberculosis. It would appear, therefore, if any attention is paid to this stipulation that the Buckeye Cotton Oil Company, instead of being an ordinary manufacturing establishment presenting danger to its employees from its complicated machinery and mechanical processes, with its boilers and engines and general paraphernalia for its business, is in reality performing the functions of a special sanatorium for the cure of tuberculosis. As the logicians express it, this is the *reductio ad absurdum.*

Argued orally by *W. H. Watkins* and *Charleton Alexander,* for appellant and *Frank Johnston,* assistant attorney-general, for the state.

Smith, C. J., delivered the opinion of the court.

This is an appeal from a conviction for the violation of chapter 157 of the Laws of 1912. The prosecution was begun by an affidavit lodged with a justice of the peace which contained five counts, each count alleging the working by appellant of a separate employee for more than ten hours on the day named. The name of the employee in the first count was Floyd Ford; in the second, Will Smith; in the third, Sol Brown; in the fourth, Warren Graham; and in the fifth, A. M. Henry. The case was submitted to the judge at circuit for decision by him, without a jury, upon an agreed statement of facts, in which it was agreed: That appellant was a corporation operating a cottonseed oil mill, setting out the manner in which the cottonseed were by it separated into their component parts, to-wit, hulls, linters, cake, and crude cottonseed oil, and prepared for use. That on the day named in the affidavit it worked the employees named in the affidavit, all of whom were adults, for more than eleven hours. That Floyd Ford was a meal cook, whose duties consisted of supervising the employees in cooking the meal, seeing that it was properly cooked, that all machines were kept in running order, and, in the event of a breakdown, report the same to the superintendent. That Will Smith was a "panman, or pan shoveler, whose duties as such were to take the cooked meal after it was formed from the former and load it in the press. It would take the said Will Smith about fourteen minutes to load the presses. There was then an intermission of ten minutes before the next loading began, and at the end of one hour he was off one hour, at the end of which time he took up the same duties again, actually working every other hour, with an intermission of ten minutes

103 Miss. 50

between each charge or loading. That, while this employee was on duty more than ten hours, in fact about eleven hours, he was engaged in actual manual labor not exceeding six hours." That Sol Brown was a seed feeder, whose duty as such was "to feed the cottonseed from the bins into the tunnel conveyer, . . . by which they are carried, by means of a screw, automatically into a sand and boll screen room." That Warren Green was a fireman, whose duty it was to "to keep steam at sufficient pressure by feeding fuel into the furnaces." That A. M. Henry was superintendent of the plant, charged with "the general supervision of the operations of the said mill." That this mill is in operation for only about five months in each year, none of the employees except Henry being employed therein except during the months the mill is in operation, Henry being employed for the year. That "the work in which these employees were engaged in no manner impairs their health, physical condition or moral nature, or that of the public," but, on the contrary, the extraction of oil from cottonseed "is a very healthful occupation, tends to build up the vitality of the system, and this is especially true where any laborer has any tendency to tuberculosis. That employment at a mill of this kind benefits them." That in discharging their duties these employees were not subjected to "noxious, injurious, or damaging odors, gases, dusts, noises," etc., and that there is connected with their employment "no unusual heat, and no complicated or dangerous machinery," but, on the contrary, the rooms in which they worked were thoroughly ventilated, and in a comfortable and cleanly condition. The court adjudged appellant guilty on each count in the affidavit, and entered a fine against it "of ten dollars for each offense, making a total of fifty dollars"

We have again, at the request of counsel, taken up the constitutionality of this statute for consideration, and see no reason for receding from the views expressed by

us in *State* v. *Newman Lumber Co.*, 59 South. 923, and
60 South. 216.

Appellant contends, however, that the agreed state-
ment of facts does not bring it within the terms of this
statute, first, because the statute was not intended to ap-
ply to cottonseed oil mills; and, second, because the em-
ployees worked by it for more than ten hours are not of
the class of employees contemplated by the statute.

It will be observed that the business in which appel-
lant was engaged is that of separating cottonseed into its
component parts, giving to those parts new forms, and
rendering them suitable for new uses. In the *Newman
Lumber Company Case, supra,* we held that a person is
engaged in manufacturing, within the meaning of this
statute, when he is engaged in the production of articles
for use from raw or prepared materials by giving to
such materials new forms, qualities, properties, or com-
binations by means of an organized force of laborers
working with machinery. From this it clearly appears
that appellant is engaged in manufacturing.

In order for appellant to be guilty, it must not only
be engaged in manufacturing, but the employees alleged
to have been worked by it overtime must be of the class
protected by the statute. In the Newman Lumber Com-
pany case we held that all possible employees of a man-
ufacturing establishment are not within the protection
of the statute; but it necessarily follows from the con-
struction there put upon the statute that all employees
who compose the organized force and work with machin-
ery, whose work supplements that of the machinery, and
must be performed while it is, and in order that it may
be kept, in operation, are within its protection. The
legislature clearly intended to protect the employee who
is confined to the precincts of the manufacturing estab-
ment, and who is practically held in bondage by the ma-
chine with, or in connection with, which his work is per-
formed, making it compulsory upon him to answer all

of its motion with corresponding action. Appellant's employees Ford, Brown, and Green are therefore within the protection of the statute, and appellant violated it in working them for more than ten hours in one day.

It is impossible for us to definitely determine, however, from the agreed statement of facts whether Will Smith was worked overtime or not. If he was on duty only for one hour at a time and then off for an hour, and not then confined to the precincts of the establishment, charged with some responsibility for the operation of the machinery, he was at work less than ten hours; but if, in fact he was on duty all the time, charged with keeping the machinery with which he worked in the continuous performance of its functions, he was, of course, at work all the while, and therefore for more than ten hours; and in that event it is immaterial that he may have had at times practically nothing to do.

It is also impossible for us to determine from the agreed statement of facts whether the employee Henry is of the class protected by the statute, as we are not thereby sufficiently advised of the character of the work performed by him. His having "general supervision of the operations of said mill" may, or may not, confine him to the precincts of the mill, and charge him with the duty of supervising employees while at work and the machinery while in operation.

That the mill was operated only about five months in each year, during which time it was kept in perfect sanitary condition, and that work therein "tends to build up the vitality of the system," is immaterial. The statute protects all employees in a designated class without reference to the sanitary or unsanitary condition of the establishment in which their work is performed. The injurious consequences from which they are protected are such as result from overwork of a certain character, and not such as result from unsanitary surroundings. That it appears from the agreed statement of facts "that

the work in which these employees were engaged in no manner impairs their health, physical condition or moral nature, or that of the public," is also immaterial, for the experience of mankind has demonstrated that the contrary is the fact, when it is performed daily for many consecutive hours. Moreover, the statute operates on all employees of a designated class, without reference to whether in a particular case the overwork will, or will not, result in detriment to the physical and mental welfare of the workman.

The court committed no error in finding appellant guilty as charged, but it erred in holding that each count in the affidavit charged a separate offense and imposing sentence accordingly. The statute simply groups the employees of a manufacturing establishment, and makes the working of all, or any of them, for more than ten hours in one day an offense. Had the Legislature desired the working of each employee to constitute a separate offense, it could easily have used language so indicating, as was done by it in other laws passed at the same session at which the one now under consideration was passed, particularly chapter 165, Laws 1912, by which the employment of children in mills is regulated.

The judgment of the court below is affirmed, and will remain in full force and effect, in so far as it adjudges appellant guilty of one violation of the statute; but, in so far as it adjudges appellant guilty of more than one violation of the statute and imposes sentence accordingly, it is reversed and remanded for proper sentence.

*Affirm on conviction of one offense.*