Buchanan v. Blair.

---

JENNIE BUCHANAN, as Administratrix, etc., *Appellee*, v. WILLIAM A. BLAIR et al., Partners, etc., *Appellants*.

No. 18,360.

### SYLLABUS BY THE COURT.

"FACTORY ACT"—*Grain Elevator—A "Manufacturing Establishment."* An elevator operated by machinery, and used for buying, selling, storing, cleaning, sorting, shelling and mixing grain, improving its grades, and converting it into new and improved or different form, by shelling corn and cleaning wheat, is, within the provisions of the factory act, a manufacturing establishment. (Laws 1903, ch. 356, Gen. Stat. 1909, §§ 4676-4683.)

Appeal from Atchison district court. Opinion filed July 5, 1913. Affirmed.

*W. P. Waggener,* and *J. M. Challiss,* both of Atchison, for the appellants.

*W. W. Guthrie,* and *W. F. Guthrie,* both of Atchison, for the appellee.

The opinion of the court was delivered by

WEST, J.: The only question presented concerns the applicability of the factory act to the elevator, operated by unguarded machinery, in which the plaintiff was injured. The jury returned the following answers to special questions submitted:

"Q.–17. Were the defendants, at the time of the ac-

cident complained of, operating a grain elevator at the place where said Buchanan was injured? A. Yes.

"Q.–18. If question No. 17 is answered 'Yes,' then state whether, in the operation of such elevator said defendants did anything, other than buying, selling, storing, cleaning, sorting and shelling and mixing grain? A. Yes.

"Q.–19. If question No. 18 is answered 'Yes,' then state what else was done there by the defendants in the transaction of such business? A. Improving grades.

"Q.–20. Did the defendants manufacture anything in their elevator? A. Yes.

"Q.–21. If question No. 20 is answered 'Yes,' then state what it was that was so manufactured? A. More improved grades of grain.

"Q.–22. Was the grain which was handled by the defendants at their elevator at the time of the injury complained of, by reason of such handling converted into a new, improved or different form? A. Yes.

"Q.–23. If question No. 22 is answered 'Yes,' then state what grain and into what new, improved or different form it was so changed. A. By shelling corn and cleaning wheat."

Section 7 of the factory act (Gen. Stat. 1909, § 4682) furnishes the definition of manufacturing establishments:

"Manufacturing establishments, as those words are used in this act, shall mean and include all smelters, oil refineries, cement works, mills of every kind, machine and repair shops, and, in addition to the foregoing, any other kind or character of manufacturing establishment, of any nature or description whatsoever, wherein any natural products or other articles or materials of any kind, in a raw or unfinished or incomplete state or condition, are converted into a new or improved or different form."

In *Caspar v. Lewin*, 82 Kan. 604, 109 Pac. 657, in speaking of the last clause of this section, it was said:

"Then, in order that the full scope of the act might not be mistaken, the broadest possible definition of a manufactory was added. . . . Although somewhat elaborate in phraseology, in essence and in sub-

stance this is the universally inclusive definition of a manufactory which is found in the dictionaries, encyclopedias and works on economics." (p. 610.)

It was held that an establishment wherein railroad iron, old stoves, old waste iron and scrap iron of every description is cut into lengths known as grade No. 1, grade No. 2 and busheling scrap, by means of machines known as alligator shears and operated by power to meet the standing specifications of mills which purchase the product, is a manufacturing establishment. It was said in the opinion that the process of manufacturing may be complicated or simple and have primary and secondary stages, but that the legislature has said that all establishments for the modification of natural objects to adapt them to human needs are embraced in the act. This was followed in *Clark v. Stock Food Co.,* 86 Kan. 982, 122 Pac. 895, and *Raines v. Stone,* 87 Kan. 116, 123 Pac. 871. In *Ward v. City of Norton,* 86 Kan. 906, 122 Pac. 881, a gasoline engine used in connection with belts, pulleys and cogwheels to pump water through pipes to supply the inhabitants of the city was decided to be not within the act. This was upon the ground that it was not even contended that the water was modified in any way to adapt it to human needs or in any sense manufactured or changed, but simply conveyed from one place to another.

The findings make it clear that the elevator containing the machinery which injured the plaintiff's husband was used for cleaning, sorting, shelling and mixing grains, improving their grades and converting them into new, improved or different forms. It is true, as suggested by the defendants, that the legislature did not use the word elevator, but the mere elevation and storage of grain would be one thing, while shelling, cleaning and converting grain into new, improved or different forms would be essentially a different thing. Corn in the ear is quite a different commodity from its

constituent elements of cob, kernel and particles of husk, silks and soil separated and removed by the process of shelling by machinery.

It must be remembered that the provisions of the act do not require conversion of the raw material into the last completed product, as corn into meal or wheat into bread, but only into a new or improved or different form, and it is attaching no elasticity to the language used to hold that the processes carried on at the elevator in question were within the meaning and intention of section 7.

The factory act presents an example of modern legislation expressing a higher regard for the sacredness and safety of life and limb than shown in the past by the lawmakers. While the courts are not required or permitted to add to or extend laws passed for this commendable purpose, it is nevertheless their duty to give to them their full and natural meaning and to construe them in the spirit which characterized their enactment and which marks the progress of the law in its regard for human safety. We think the ruling of the trial court was not only sustained by the facts, but that it was clearly correct.

The judgment is therefore affirmed.