BRADY, Justice:
This is a case of first impression in the State of Mississippi. In April 1965 the appellant filed a petition with the Mississippi Workmen’s Compensation Commission for double benefits under Mississippi Code Annotated section 6998-54 (1952). The Attorney Referee and the full Commission found against the appellant Upon appeal to the circuit court the Commission’s order was affirmed, and an appeal is thus perfected to this Court.
The record reveals the following pertinent facts: On October 29, 1961, the appellant sought and obtained employment from the appellee, the appellant being on that date seventeen years, one month and eleven days of age. On November 3, 1961, he was injured and lost the fifth, fourth and third fingers of his left hand and ninety percent of the index finger and seventy-five percent of the thumb. He has lost one hundred percent industrial use of his left hand just as if it had been completely severed from the wrist. He can only use his left hand to hold a cigarette or small object by pressing the remaining part of his thumb against the base of his index finger.
The operation of the appellee mill requires the work of nine persons. The appellant and a Negro named Roosevelt Manuel were engaged as sucker men and tie men. Epph-ram Holly was a yard man, Wash Brown was a clean-up man, and Mr. P. A. Peden was the ginner. The press crew consisted of Jesse Roscoe and two other men. Mrs. Peden was the office manager and bookkeeper. The gin operated on two twelve hour shifts. Appellant’s hours of work were from 7:00 a. m. to 7:00 p. m. seven days a week. The work which he performed consisted of climbing into the trailers which brought the cotton from the fields to the gin and directing a twelve inch suction pipe into the cotton in the trailer. The cotton was thus sucked up into the gin and the trailer emptied. The appellant was required to move the pipe or sucker over the cotton so that all the cotton could be removed from the trailer. When the appellant was not operating the sucker pipe, he was required to prepare the metal ties or strips used to band or bind the cotton after the ginning processes were completed. One sucker operator would unload a trailer while the other prepared the ties. The tie is a flexible metal strip about one inch wide by one-eighth inch thick and approximately twelve feet long. The ties came to the gin in bundles of thirty each. There was a buckle or fastening device for each tie. Each bundle of ties was secured by a metal band at each end. Each tie was bent near the end into the shape of a hook. A buckle was placed on it, and each buckle was struck with a hammer and closed. It was then placed back in a rack. The tie was then ready to be bound around the bale of cotton after the cotton was pressed.
The proof shows that the gin used or consumed approximately sixty ties per hour so as to require one tie to be prepared approximately every minute while the gin was in operation. The sucker operator, when handling the ties, had to lift two bundles and go through the aforementioned procedure sixty times each hour. The record discloses that if the sucker operator failed to feed the cotton into the gin, the gin would not operate and would have to be shut down. Likewise, if the sucker operator failed to keep a sufficient supply of ties available, the gin could not operate since the bales of cotton could not be fastened.
The record discloses that practically all the cotton ginned by appellee in 1961 was mechanically picked. During the ginning process the cotton was dumped from a mechanical cotton picker in the field into *110 trailers which had a capacity of from one to twelve bales, the average trailer holding four or five bales. The record disclosés that appellee’s gin processed ten bales of seed cotton per hour or a bale every six minutes. The time required for unloading the average trailer was from twenty-five to thirty minutes. It is obvious that a highly coordinated system was utilized by the appel-lee in the handling of the cotton.
The record further shows that when the seed cotton arrived at the gin, it varied in moisture content; that it was perishable and had to be processed or ginned within forty-eight hours in order to avoid a substantial loss in value. The record discloses that during the ginning process this moisture was removed by the use of hot air; foreign matter was removed and the seed separated from the lint or cotton fibers. Seed cotton as it arrived at appellee’s gin was not a marketable product. However, subsequent to the ginning process the cotton became marketable and was sold in the condition in which it left appellee’s gin. In a matter of six minutes the product was converted from a non-marketable commodity into a marketable one with a value of approximately $150 to $170 per five hundred pound bale of lint cotton. In addition, cottonseeds were obtained and likewise had a marketable value.
Around 4:30 or 5:00 o’clock on the afternoon of November 3, as appellant performed his duties, the gin choked up. ■ This was not an infrequent occurrence due to electrical failures and other reasons. Appellant was instructed by the ginner, who was his foreman, to come inside the gin and correct the difficulty. While trying to remove the lint cotton which had balled up around some of the gin saws, appellant’s left hand came in contact with some of the machinery, resulting in the trauma and surgical amputation of the fingers of his left hand.
It is agreed that appellant’s average weekly wage was $50.40; that he was completely and totally disabled as a result of the injury for a total of eighteen weeks and two days; and that he has lost the use of his left hand. These facts were found by the Attorney Referee and the Commission. The Attorney Referee, affirmed by the Commission and subsequently by the Circuit Court of Washington County, also found that appellant was under eighteen years of age at the time of the accident, even though he had represented to his employer at the time he applied for employment that he was nineteen years of age. Likewise, the Attorney Referee found: “That there is no evidence to the effect that there has been filed with the Secretary of the Commission a certified copy of the findings of the Court of Final Appeal on the prosecution and conviction of the employer for violation of the Child Labor Law in this cause, as required by the Commission’s procedural Rule Number 13;” and “That the employer herein did not at the time of the injury to the claimant work adult male labor only.”
The opinion of the Attorney Referee, which concerns us in this appeal, is as follows:
It is the opinion of the Attorney Referee that Section 48 of the Compensation Act is a penal statute that is based on a criminal statute, Section 6986 of the Mississippi Code of 1942, both of which require a strict construction.
I am further of the opinion that the cotton gin does not come within the meaning of Section 6986 of the Code of 1942 in that it is not specifically mentioned and it could have easily been included had the Legislature so intended. For these reasons and the fact that there has been no compliance with the Commission’s procedural Rule Number 13 with respect to businesses not specifically mentioned as hazardous, I am of the opinion that the claimant has failed to establish a claim for double compensation against the employer herein.
There are presented to us for consideration two questions: First, was the appellee’s gin, under the facts of this case, a “manufacturing establishment” under the provi *111 sions of section 6986 of the Mississippi Code of 1942? Second, assuming that the appellee’s gin falls within the meaning of a manufacturing establishment, was the appellant barred from recovering a double penalty because he represented himself to be nineteen years of age when he was actually only seventeen?
Mississippi Code Annotated section 6998-54 (1952), which is section 48 of the Workmen’s Compensation Act, provides as follows:
Double compensation and death benefits for minors illegally employed. — Compensation and death benefits shall be double the amount otherwise payable if the injured employee at the time of the injury is a minor under eighteen (18) years of . age employed, permitted or suffered to work in violation of any provision of the Mississippi labor laws. The employer alone and not the insurance carrier shall be liable for such increased compensation or increased death benefits. Any provision in an insurance policy undertaking to relieve an employer from such increased liability shall be void.
Furthermore, it is to be noted that the pertinent parts of section 6986 are as follows : .
Regulating hours of labor. — No boy or girl over fourteen years of age and under sixteen years shall be permitted to work in any mill, cannery, workshop, factory, or manufacturing establishment more than eight hours in one day, or more than forty-four hours in any one week, or be employed in or detained in any such establishment between the hours of 7 p. m. and 6 a. m. * * * Provided, that employees over sixteen years old may work not more than thirty minutes additional time each day for the first five days of the week, the additional time so worked to be deducted from the last day of such work; * * * but sixty hours shall constitute a full week’s work for such employees. (Emphasis added.)
The record discloses that appellant worked approximately seventy-two hours during the six days in which he was employed. At his age this constitutes a clear violation of section 6986.
Mississippi Workmen’s Compensation Commission Rule 13 defines the labor laws referred to in section 6998-54 as follows:
VIOLATIONS OF CHILD LABOR LAW. In matters pertaining to violations of the Child Labor Law, those certain sections numbered 6985 to 6993, inclusive, of the 1942 Code of Mississippi Annotated, shall be considered by the Commission as the labor law referred to in Section 48 of the Mississippi Workmen’s Compensation Act. The Commission may order double compensation assessed against any employer where a minor worker is injured in the occupations or businesses specifically listed as hazardous in said sections in the Mississippi Code of 1942 Annotated, heretofore referred to. In all other instances of injury to minors, before double compensation shall be assessed against an employer as a penalty, there shall be filed with the Secretary of the Commission a certified copy of the findings of the court of final appeal on the prosecution and conviction of the employer in connection with violation of the Child Labor Law. (Emphasis added.)
The record discloses that on the date the appellant sustained his injuries he had worked twelve hours a day for six days, approximating seventy-two hours of work, in violation of section 6986. Appellee urges that since the cotton gin is not expressly named in section 6986, Rule 13 of the Mississippi Workmen’s Compensation Commission is controlling. Rule 13 provides that in matters pertaining to the child labor laws the Commission will consider all sections from 6985 to 6993, inclusive, as referred to in section 48 of the Mississippi Workmen’s Compensation Act. Section 48 of the Mississippi Workmen’s Compensation Act specifically provides for the payment of double *112 compensation and death benefits for the injury or death of minors illegally employed and further provides that the employer alone, not the insurance carrier, shall be liable for the increased compensation.
The precise contention of the appel-lee is that since the business of ginning cotton is not specifically listed as hazardous in section 6986 of the Mississippi Code, it was incumbent upon the appellant to furnish and file with the Secretary of the Commission a certified copy of the findings of the court of final appeal on the prosecution and conviction of the employer in connection with violation of the child labor law. Tersely stated, it is the basic argument of appellee that since a cotton gin is not specifically designated in section 6986, together with mill, cannery, workshop, and factory, it was not the intention of the legislature to permit double compensation to be awarded where a minor was injured when working in such cotton gin. We hold that there is no merit in this contention since the legislature wisely went beyond the four specific businesses designated in section 6986 and added the additional field of “manufacturing establishment.” It is obvious to us from a review of the cases involving injuries to minors that the legislature recognized that in the future there would be manufacturing businesses other than mills, canneries, workshops and factories in which minors would be employed and possibly injured. The basic purpose of all child labor laws is to prevent the overwork and injury of children and adolescents. The legislature in enacting section 6986 realized that as this state developed economically, other manufacturing interests would arise. It therefore wisely broadened the statute so as to specifically include “or manufacturing establishment.” The choice of the words “manufacturing establishment” is not as specific or detailed as a mill or cannery, but it is specific enough so that we can determine what the legislature intended. It is not necessary for us to determine, and we expressly do not do so, whether or not Rule 13 falls outside the authority granted the Workmen’s Compensation Commission by the legislature in that the Commission is requiring a minor, in order to receive double compensation, to first secure the prosecution and conviction of an employer in a court of final appeal.
We find three or more cases in Mississippi which, though not expressly in point, shed light on what the legislature intended by the use of the term “manufacturing establishment.” The first of these is Buckeye Cotton Oil Company v. State, 103 Miss. 767, 60 So. 775 (1913). In that case the court held that a corporation operating a cottonseed oil mill in which cottonseed was separated into its component parts, which parts were given new forms and rendered suitable for new uses, was engaged in manufacturing within the Laws of 1912, chapter 157, making it unlawful for any person, firm or corporation engaged in manufacturing to work their employees more than ten hours a day, except in cases of emergency, or where the public necessity required it. While the steps taken and the amount of work involved in cottonseed oil production may be more detailed and abundant than in the case at bar, the fact nevertheless remains that in each instance cotton is separated into various component parts, these parts having new forms and being rendered suitable for new uses. We have failed to find where the courts of this state have changed this basic rule or requirement insofar as what constitutes manufacturing. The rule which Mississippi adopted in the Buckeye case seems to be in conformance with the general rule outlined in 55 C.J.S. Manufactures § 3, at page 681 (1948). There it is pointed out as follows:
In considering what constitutes a manufacture or manufacturing, the more comprehensive definitions which are set out supra § 1 indicate that generally there are three main or essential elements: (1) An original substance or material, frequently referred to as raw material. (2) A process whereby- the original material is changed or transformed. (3) An *113 article or substance which, by reason of being subjected to the processing, is to some extent different from the original substance or material.
Furthermore, in State v. J. J. Newman Lumber Company, 102 Miss. 802, 59 So. 923, 45 L.R.A.,N.S., 851 (1912), it was contended by the appellee that the 1912 statute mentioned above was too vague and indefinite; that it did not properly distinguish between what constituted manufacturing as opposed to repairing. In that case this Court stated:
It does not seem to have been difficult in the instant case. The indictment charges that the men employed were at work in different departments of appel-lee’s manufacturing plant, and that ap-pellee was operating such a manufacturing enterprise, and was also engaged in the work of repairing all kinds of engines, boilers, locomotives, cars, and machinery used in and about the mill plant and the logging railroad. It will be seen, therefore, that appellee’s enterprise included both manufacturing and repairing in its work. (102 Miss, at 825, 59 So. at 926.)
This Court defined “manufacturing” in the following language:
A reasonable definition may be given to “manufacturing” (Century Dictionary) as the system of industry which produces manufactured articles, and to “manufacture” as the production of articles for use from raw or prepared materials, by giving to these materials new forms, qualities, and properties, or combinations, whether by hand labor or machinery, used more especially of production in a large way by machinery, or many hands working co-operatively. (102 Miss, at 825, 59 So. at 926.)
In this 1912 case the Court further said:
(O)n account of the rapid increase in manufacturing enterprises in this state, the same class of persons have grown to a great number, and there is every reason to believe that their number will steadily increase. It is not improper to conclude that the Legislature had all this in mind when the law was enacted, and decided that it would affect many of the future citizens of Mississippi. (102 Miss, at 826, 59 So. at 926.)
By the same ratio decidendi we conclude that the legislature had these same considerations in mind when it inserted the additional phrase “or manufacturing establishment” into section 6986. Mississippi is not unique in this field, and we find that other states have reached substantially the same conclusions reached here.
In the case of Jeffries v. Farmers’ Union Co-op. Mercantile & Elevator Company, 102 Kan. 811, 176 P. 631 (1918), where it was urged that a grain elevator operated by a gasoline engine was not a manufacturing establishment within the meaning of the Factory Act of Kansas, the Kansas Supreme Court held that a grain elevator, wherein grain coming from the farm in a raw state or condition is converted into an improved form by the processes of elevating, drying, cleaning, and mixing, was a “factory” within the meaning of the Factory Act (Gen.St.1915, § 5892).
In Buchanan v. Blair, 90 Kan. 420, 133 P. 709 (1913), the Kansas Supreme Court held that an elevator operated by machinery and used for buying, selling, storing, cleaning, sorting, shelling, and mixing grain, improving its grades, and converting it into new and improved or different forms was a “manufacturing establishment” within the provisions of the Factory Act. The Court there stated:
Corn in the ear is quite a different commodity from its constituent elements of cob, kernel, and particles of husk, silks, and soil separated and removed by the process of shelling by machinery. (133 P. at 710.)
*114 As was pointed out in State v. J. J. Newman Lumber Company, supra:
It is well known that, in the work connected with the running of machinery, the operator is subjected to a mental as well as physical strain. In many cases the nearness to machinery makes the work dangerous in case of an overtaxing of the strength of the worker, or any lessening in his alertness. We can readily understand that all this was in the minds of the Legislature when the law now under discussion was considered. Besides, it would not be unreasonable for the Legislature to decide that it would promote the health, peace, morals, and general welfare of all laborers engaged in the work of manufacturing or repairing if they were not permitted to extend their labor over 10 hours a day, and the Legislature could also decide that the best interests of the people in the state would be promoted by limiting the time of work of this numerous class of its citizenry to the time mentioned. (102 Miss, at 834, 59 So. at 929.)
We believe that these words succinctly explain the intent of the legislature with reference to labor laws generally, as well as to child labor laws in particular. We do not believe that the Workmen’s Compensation Commission has the right by Rule 13 to require that a minor must secure the indictment and conviction of his employer in the court of final appeal before he is entitled to double compensation where the facts in the case show beyond dispute that the child labor law has been patently violated.
The second contention of the appellee is that because appellant lied about his age, appellee did not violate any of the pertinent child labor laws and the appellant consequently is not entitled to double compensation benefits. While in fiction it is apropos that the fabrication by a “Monseigneur Bienvenu” be praised and the falsehood of a “Sister Simplice” may be placed to her credit in Paradise, this is not true in law. Truth is the only basis upon which humanity can possibly advance, and this Court does not approve or condone the bearing of false witness.
Nevertheless, the child labor laws placed upon the appellee the burden not to employ minors. This burden is not met by the employer establishing that the minor misrepresented his age at the time of the employment. It was incumbent upon the appellee to exercise reasonable care to insure that a minor protected by the labor laws was not illegally employed in its business. A cursory investigation of appellant’s school record, an examination of his birth certificate or driver’s license, or a request to see his draft card, would have revealed the appellant’s actual age. Although appellee’s bookkeeper had been expressly cautioned by her superior to be certain about appellant’s age, and even though she knew at the time of his employment that he was of teen age, nevertheless, she did nothing more than ask him how old he was. This is a far cry from the exercise of reasonable care to insure that a minor is not employed in violation of the statutes.
. It follows that the appellee is not to be excused for its failure to comply with the requirements of the statute because of the appellant’s falsehood. The appellant is therefore entitled to recover the double compensation sought from the appellee-employer.
The judgment of the Circuit Court of Washington County is reversed and judgment entered here for the appellant and the cause is remanded to the Workmen’s Compensation Commission so that it may enter proper and necessary orders to comply with this judgment.
Reversed, judgment for appellant and remanded.
ETHRIDGE, C. J., and RODGERS, JONES and INZER, JJ., concur.